**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
APRIL BROWN *and*
SHARI BURANONDHA,
*each individually and on behalf of*
*all others similarly situated*,

                  *Plaintiffs*,

        *v.*

FORCE ONE INTERNATIONAL SECURITY, INC., FKA
FORCE ONE INTERNATIONAL SECURITY &
CONSULTANT FIRM, INC.,
AHMAD SHAHEED, Sr. AKA AHMED SHAHEED, Sr., *and*
AHMAD SHAHEED, Jr. AKA AHMED SHAHEED, Jr.,

                 *Defendants*.
-----------------------------------------------------------------------X

Index N°: **14 CV 2614**

**COMPLAINT**

**Related to:**
**14 CV 1795 (DLI)(RER)[1]**

## NATURE OF THE ACTION

1.    Plaintiffs, April Brown and Shari Buranondha, individually, and on behalf of all others similarly situated, by and through counsel, The Harman Firm, PC, respectfully allege as follows.

2.    Plaintiffs April Brown and Shari Buranondha allege, on behalf of themselves and other similarly situated current and former office workers of Defendants who elect to opt into this action pursuant to the Fair Labor Standards Act of 1938 as amended, 29 U.S.C. §§ 201–19 ("FLSA") and the New York State Labor Law ("N.Y. LAB. LAW"), that they are entitled to:

    (i)    Unpaid wages from Defendants for overtime work for which they did not receive overtime premium pay, as required by law;

    (ii)    Unpaid wages according the FLSA; and

---

1.  This Complaint and corresponding action are potentially related to *Garvin v. Force One Int'l Sec'y, Inc. et al.*, 14 CV 1795 (DLI)(RER) (E.D.N.Y.).  *See* Statement of Relatedness annexed hereto as Exhibit A.

(iii)     Liquidated damages pursuant to the FLSA.

3.        Plaintiffs further allege, on behalf of all Defendants' hourly employees, pursuant to FED. R. CIV. P. 23, that they are entitled to illegally withheld wages under N.Y. LAB. LAW §§ 191, 650 *et seq.*

4.        Plaintiffs further allege that they are entitled to illegally deducted wages under N.Y. LAB. LAW § 193.

## VENUE AND JURISDICTION

5.        This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1331, 1337, and 1343.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.        Each Defendant maintains sufficient contacts with the Eastern District of New York to make venue appropriate in this Court pursuant to 28 U.S.C. § 1391.

7.        This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201–02.

8.        Pursuant to FED. R. CIV. P. 38(b), Plaintiffs demand a trial by jury on all issues raised in this action.

## PARTIES

9.        Plaintiff April Brown was at all relevant times an adult individual, residing in the State of New York, County of Kings, 55 Gates Avenue, Brooklyn, New York 11216.

10.       Plaintiff Shari Buranondha was at all relevant times an adult individual, residing in the State of New York, County of Kings, 574 Atlantic Avenue, Brooklyn, New York, 11217.

11.     Defendant Force One International Security, Inc., formerly DBA Force One International Security & Consultant Firm, Inc. ("Defendant Force One") is a security company, which upon information and belief has headquarters in the Town of Greene, County of Chenango, State of New York.

12.     Defendant Force One has premises in Brooklyn, New York where Plaintiffs reported to work; for this reason Plaintiffs bring these claims to the U.S. District Court for the Eastern District of New York.

13.     Defendant Ahmad Shaheed, Sr. AKA Ahmed Shaheed, Sr. ("Defendant Shaheed, Sr.") is upon information and belief the owner of Defendant Force One and served as supervisor of Plaintiffs within the meaning of applicable federal and state statutes.

14.     Defendant Ahmad Shaheed, Jr. AKA Ahmed Shaheed, Jr. ("Defendant Shaheed, Jr.") is upon information and belief the owner of Defendant Force One.

15.     All Defendants separately defined in ¶¶ 11–14 are hereinafter referred to as "Defendants."

16.     All individuals named as Defendants in ¶¶ 13–14 are hereinafter referred to as "Individual Defendants".

17.     Upon information and belief, Individual Defendants acted intentionally and maliciously, and each is an "Employer" pursuant to 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, and N.Y. LAB. LAW §§ 2(6), 190(3), and is thus liable with the other Defendants.

18.     Plaintiffs bring one (1) claim as a collective action pursuant to 29 U.S.C. § 216(b); putative members of the collective action include all office workers employed by Defendants in the three (3) years prior to the filing of this Complaint.

19.     Plaintiffs bring one (1) claim as a class action pursuant to FED. R. CIV. P. 23(b)(1)-(3); potential class action members include all hourly employees employed by Defendants in the six (6) years prior to the filing of this Complaint.

## FACTUAL ALLEGATIONS

### Plaintiff April Brown

20.     Plaintiff Brown was hired by Defendants as a security guard in or around June 2007 and was compensated approximately nine dollars ($9) per hour.

21.     Plaintiff Brown was subject to the company-wide "40 in the hole" policy, whereby payment for each employee's first forty (40) hours of work was to be held by Defendant Force One until his or her employment ended.  (In fact, the company never pays employees for these first forty (40) hours of work.)

22.     Approximately one (1) year after being hired, Plaintiff Brown was promoted to Administrative Clerk and continued to be compensated at approximately nine dollars ($9) per hour, without any benefits.

23.     Defendants deducted ten dollars ($10) from each of Ms. Brown's paychecks for "uniform maintenance."  Plaintiff Brown does not wear a uniform, and was never reimbursed for this deduction.

24.    After being promoted, Plaintiff Brown worked approximately five (5) hours of overtime per week, for which she was never paid.[2]

25.    Plaintiff Brown received a yearly raise of approximately one dollar ($1) per hour until her wages reached a rate of sixteen dollars ($16) per hour.

26.    Plaintiff Brown always accurately recorded her time, even when she worked more than forty (40) hours in a one-week (1-week) period.

27.    Plaintiff Brown complained to Defendants about the facts that (i) she was not being compensated for the work beyond forty (40) hours per week and (ii) she was not being compensated at an overtime rate for those hours; she was told that as a private company Defendants were not obligated to compensate for overtime work.

### Shari Buranondha

28.    In or around May 2011, Plaintiff Buranondha began working with Defendants.

29.    Plaintiff Buranondha worked at Defendants' Clifton facility in Brooklyn until April 2013.

30.    From April 2013 until August 2013, Plaintiff Buranondha's sole task was payroll work; she performed all her work at home, and would log approximately thirty (30) hours per week every other week.

31.    Plaintiff Buranondha was subject to the company-wide "40 in the hole" policy, whereby payment for each employee's first forty (40) hours of work was to be held by Defendant Force One until his or her employment ended.

---

2.    Plaintiff Brown worked approximately five (5) hours overtime per week—or two hundred sixty (260) overtime hours per year—for example, Plaintiff worked approximately 260 hours of overtime in the year 2013 at what should have been an overtime rate of pay of twenty four dollars ($24) per hour (1.5 times her normal rate of sixteen dollars ($16) hour), bringing her annual loss for 2013 to six thousand, two hundred and forty dollars ($6240.00).  Plaintiff is entitled to liquidated damages of 100% bringing her total damages for that year to twelve thousand, four hundred and eighty dollars, ($12,480.00) plus attorneys fees and interest.

32.     Plaintiff Buranondha has not received her first forty (40) hours of pay.

33.     Defendants deducted ten dollars ($10) from each of Ms. Buranondha's paychecks for "uniform maintenance."   Plaintiff Buranondha does not wear a uniform, and was never reimbursed for this deduction.

34.     Plaintiff Buranondha wrote a twenty (20) page employee manual, which explained the "40 in the hole" policy, as well as deposits and deductions for uniform maintenance.

35.     Plaintiff Buranondha's starting wage was eight dollars ($8) per hour; it increased over time to eleven dollars ($11) per hour.

36.     Plaintiff Buranondha was required to purchase her own office supplies, and was rarely reimbursed by Defendants.

37.     Until April 2013, Plaintiff Buranondha worked approximately twenty to twenty-five (20–25) hours per week.

38.     In order to be licensed to do security work, one cannot be a felon or have any outstanding felony charges.   The Defendants disregarded this requirement and hired anyone willing to work under their regime.   For example, Defendants once literally went to the corner and invited several drunks and drug addicts to work for him without any identification or papers. Many of Defendant Force One's security guards were never licensed.

39.     Defendants did not rigorously check the credentials of the people whom they would hire for security, which was the *raison d'être* of the corporate Defendant.   There were approximately thirty (30) unlicensed workers at any given time, which made Plaintiffs very uncomfortable at work.

40. Frequently Defendants would tell her not to pay the other employees properly; those employees, in turn, took their anger at him out on Plaintiff Buranondha.

41. Defendants regularly told Plaintiff Buranondha not to pay the ex-convicts who worked for Defendant Force One, and not to pay them overtime. Defendants made it clear that, in order to keep her job, she must follow his instructions and do whatever he told her to do with no objection. Plaintiff Buranondha was often told: "Listen, do what I say because I'm the boss."

42. Plaintiff Buranondha was told: "Don't prepare NYS child support to go out, because it is a hassle." Defendants typically withheld child support from employees' check but would never distribute the money.

43. Until early 2012, daily starting and ending times were recorded on a sign-in sheet.

44. Beginning in early 2012, daily starting and ending times were recorded a using punch clock. However, in or around December 2013, time was once again recorded by sign-in sheet, in order for Defendants to more easily misrepresent employees' time worked.

45. Plaintiff Buranondha noticed that the records of hours worked by employees were regularly altered with no explanation or apparent reason.

46. Defendants tried to implement an ADP payroll system in the fall or winter of 2012, but he gave up on the system because it did not allow him to take the amounts of withdrawals that he normally took.

47. Defendants often blamed payroll "mistakes" on Plaintiff Buranondha, although they took the deductions themselves.

48. Every day Defendants would argue with Plaintiff Buranondha over the phone about employees' overtime and deductions. On several occasions Plaintiff Buranondha warned Defendants against their illegal practices, saying, for example: "this is illegal and you are lucky

that no one has filed a lawsuit against this company," or, "they could file a class action against you."

### Wage Theft as Initiation

49.     When Plaintiffs Brown and Buranondha individually, and all other hourly employees of Defendants commence their employment with Defendants, their wages are, by design, stolen through a policy called "40 in the hole."

50.     Defendants' "40 in the hole" policy means that Defendants steal their employees wages for the employees' first forty (40) hours of work performed.  Defendants hold that pay hostage until the employment is terminated.  Then, Defendants elect whether or not to return the stolen wages to the worker that earned them.

51.     Defendants refuse to return Plaintiffs' "40 in the hole" nor have they returned the "40 in the hole" of other employees.

### Wage Theft for Phantom Clothing

52.     Defendants steal ten dollars ($10) per biweekly paycheck for "uniform maintenance," a deduction which Plaintiffs never agreed to, and which is never returned to the employee.  While taking this deduction is a *prima facie* illegal act under N.Y. LAB. LAW § 193, it is metastasized by the fact that Plaintiffs did not even wear uniforms.  This repeated burden helps underscore Defendants' malicious intent and disregard for their employees.

### Other Illegal Behavior by Defendants

53.     Plaintiffs individually, and all others similarly situated, were provided their statutorily mandated breaks only if they needed to leave the premises for an errand.  If Defendants' employees took a break in any other form, they were told "you're missing work."

54.     Plaintiffs, were required to eat lunch at their desks and to keep working while eating; all similarly situated employees are reprimanded if they elect to take lunch offsite.

55.     Defendants also attempted to steal the entirety of Plaintiff Brown's final paycheck.  She had to call Defendants' attorney, Harry R. Thomasson, Esq., in order to secure her last paycheck.  She was provided that option only after Plaintiffs' counsel's issuance of a litigation-hold and preservation letter.  Mr. Thomasson finally sent a text message to Plaintiff on or around March 5, 2014, and her final paycheck was delivered by mail and a termination letter was attached.

56.     Defendants' disregard for their employees' wellbeing is also underscored by Defendants' vacation policy.  While Plaintiff understands that she is not lawfully entitled to any vacation time, whether paid or not, she was only granted one (1) unpaid vacation of five (5) days during her tenure with Defendants, which occurred around three to four (3–4) years ago.

57.     Plaintiff Brown was terminated February 21, 2014 in retaliation for complaining about unpaid wages.

58.     Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA pursuant to 29 C.F.R. § 516.4

### FIRST CAUSE OF ACTION - CLASS ACTION UNDER FED. R. CIV. P. 23
### Wage Theft for Defendants' "Forty in the Hole" Policy, Requiring Forty Unpaid Hours Before Any Compensation Begins
### (On Behalf of all Defendants' Hourly Employees)

59.     Plaintiffs respectfully incorporate all allegations in this Complaint as though separately alleged herein.

60.     Plaintiffs bring their first cause of action as a class action under FED. R. CIV. P. 23(b)(1)-(3) ("Rule 23").

61.    At all relevant times, Plaintiffs have been and continue to be employees within the meaning of the N.Y. LAB. LAW §§ 2, 651.

62.    At all relevant times, Defendants have been and continue to be employers within the meaning of the N.Y. LAB. LAW §§ 2, 651

63.    Defendants required Plaintiffs and putative Class members to work for forty (40) hours prior to receiving compensation for their labor.

64.    Defendants' claimed that they were withholding forty (40) hours worth of wages to be paid upon Plaintiffs' termination, an excuse that in no way justifies the withholding of wages.

65.    N.Y. LAB. LAW § 191(1)(d) mandates the timely payment of wages. Defendants' policy clearly violates § 191, among others.

66.    Despite Defendants' alleged plan to pay back the illegally withheld wages upon termination, Plaintiffs never received compensation for their initial forty (40) hours worked.

67.    Defendants' policy of withholding forty (40) hours of wages is an illegal and exploitative practice, and has caused Plaintiffs and Class members harm in an amount to be determined by the Court, plus interest, liquidated damages, attorney's fees, and costs of litigation.

68.    Plaintiffs bring this claim under N.Y. LAB. LAW §§ 191 *et seq.* on behalf of all employees of Defendant for the six (6) years preceding the filing of this action who were required to work for forty (40) uncompensated hours prior to receiving regular compensation. ("Rule 23 Class Members").

69.    The Rule 23 Class Members are readily ascertainable. The number and identity of the Rule 23 Class Members are determinable from Defendants' records. The amount of withheld

wages is readily ascertainable from Defendants' records. For purposes of notice and other purposes related to this action, the Rule 23 Class Members' names and address are readily available from Defendants.  Notice can be provided by means permissible under Rule 23.

70.    The Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit all Parties and the Court. Although the precise number of Rule 23 Class Members is not known, and the facts on which the calculation of that number are presently within the sole control of Defendant, upon information and belief, there are more than one hundred (100) Rule 23 Class Members.

71.    Plaintiffs' claims are typical of the claims that the Rule 23 Class Members could allege; the relief that they seek is typical of the relief that the Rule 23 Class Members could seek. Plaintiffs and the Rule 23 Class Members were subject to the same "40 in the hole" policy. Defendants illegally withheld wages from Plaintiffs and Rule 23 Class Members.

72.    Defendants' policies and practices affected all Rule 23 Class Members, and Defendants benefited from the same type of wrongful withholding as to each Rule 23 Class Member. The Rule 23 Class Members including named Plaintiffs sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

73.    Plaintiffs will fairly and adequately protect the interests of the Rule 23 Class Members.  They have no interests antagonistic to the Rule 23 Class Members', and they will vigorously pursue this action via attorneys who are competent, skilled, and experienced in litigating employment law class actions.

74.    Common questions of law and fact exist as to the Rule 23 Class Members that predominate over any questions affecting only individual members, including but not limited to:

(i) Whether Defendants illegally withheld wages under the "40 in the hole" policy;

(ii) What proof of hours worked is sufficient where employers fail in their duty to maintain time records;

(iii) Whether Defendants ever compensated Rule 23 Class Members for their first forty (40) hours of work;

(iv) Whether Defendants acted willfully;

(v) Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interests, costs and disbursements and attorneys' fees; and

(vi) Whether Defendants are liable for Plaintiffs' and the Rule 23 Class Members' attorneys' fees and costs.

75.    The nature of this action makes a class action a superior method for the fair and efficient adjudication of Plaintiffs' and the Rule 23 Class Members' claims for the following reasons:

(i) This case involves a large corporate Defendant with extensive resources, and many individuals who have limited resources and who have relatively small claims with common questions of law and fact;

(ii) If each Rule 23 Class Member were required to file a separate law suit, Defendants, with their extensive resources, would be able to exploit and overwhelm the limited resources of the individuals;

(iii) Requiring each Rule 23 Class Member to file a separate law suit would discourage other Rule 23 Class Members still employed by Defendants from

asserting lawful claims because of an appreciable fear that Defendants will retaliate against them;

(iv) Prosecuting separate lawsuits by each Rule 23 Class Member would create a substantial risk of inconsistent or varying verdicts; would establish potentially incompatible standards of conduct for Defendants; would result in legal determinations as to each individual that are dispositive of the interests of the other Rule 23 Class Members who are not parties to the adjudications; and would impair or impede the ability of the Rule 23 Class Members to protect their own interests;

(v) The individual claims are not large enough to warrant the costs and expenses that would be incurred in individual prosecution making it difficult, if not impossible, for the individuals to redress the wrongs done to them; and

(vi) The cost to the legal system for individual adjudication would be substantially greater, making the class action superior.

76.     This action is maintainable as a class action under FED. R. CIV. P. 23(b)(2), since the unlawful actions of Defendants, as alleged herein, have been taken on grounds equally applicable to all members of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

77.     Alternatively, this action is equally maintainable as a class action under FED. R. CIV. P. 23(b)(1)(A), as the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants who oppose the Class.

78.     Alternatively, this action is maintainable as a class action under FED. R. CIV. P. 23(b)(3) as common questions of law and fact described above predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversies between the parties.  The members of the Class have been damaged and are entitled to recovery because of Defendants' common and uniform policies, practices, and procedure that violate the N.Y. LAB. LAW.

79.     Due to Defendants' violation of N.Y. LAB. LAW § 191(1)(d), Plaintiffs and rule 23 Class members are entitled to payment for forty (40) hours of work at their initial wage, plus liquidated damages, interest, costs, and fees.  N.Y. LAB. LAW § 663.

**SECOND CAUSE OF ACTION – COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b)**
**Failure to Pay Overtime under the FLSA against all Defendants**
**(On Behalf of all Defendants' Office Workers)**

80.     Plaintiffs respectfully incorporate all allegations in this Complaint as though separately alleged herein.

81.     Plaintiffs bring their second cause of action as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all Defendants' office employees for the three (3) years preceding the filing of this action.  ("FLSA Collective Plaintiffs").

82.     At all relevant times, Plaintiffs and FLSA Collective Plaintiffs have been and continue to be employees within the meaning of the FLSA, 29 U.S.C. §§ 206–07.

83.     At all relevant times, Defendants have been and continue to be employers within the meaning of the FLSA, 29 U.S.C. §§ 206–07.

84.     At all relevant times, Defendants employed, and/or continued to employ, Plaintiffs and each of the Collective Action Members within the meaning of the FLSA.

85.     Defendants managed Plaintiffs and other similarly situated employees' employment, hours of work per workweek, rate of pay and payday.

86.     The FLSA provides that "no employer shall employ any of his employees. . . for a workweek longer than forty (40) hours unless such employee receives compensation for . . . excess . . . hours . . . at a rate not less than one and one-half times the regular rate at which [they are] employed."  29 U.S.C. § 207(a)(1).

87.     At all relevant times, Defendants refused to pay overtime compensation for hours worked in excess of forty (40) per workweek.

88.     As a result of Defendants' willful failure to record, report, credit and compensate office clerks, including Plaintiffs and the other FLSA Collective Plaintiffs, Defendants have failed to make, keep and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA.

89.     Defendants have falsified and continue to falsify their employees' time records in order to withhold overtime compensation.

90.     At all relevant times, Defendants acted in reckless disregard of the applicable provisions of the FLSA.

91.     At all relevant times, Plaintiffs and the other FLSA Collective Action Plaintiffs have been similarly situated, had substantially similar job requirements and pay provisions, and have been subject to Defendants' decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay overtime compensation, or any compensation at all, for hours worked in excess of forty (40)

hours per week, as alleged herein.  Plaintiffs' FLSA claims are essentially the same as those of the other FLSA Collective Plaintiffs.

92.     The work performed by Plaintiffs required limited skill and no capital investment. Their duties did not include managerial responsibilities or exercise of independent judgment.

93.     Although the exact number of individuals similarly situated is presently unknown, it is known by Defendants and can be ascertained through discovery.

94.     The FLSA Collective Plaintiffs are readily ascertainable.  For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendant.  Notice can be provided to the FLSA Collective Plaintiffs via email and via first-class mail to the last address known to Defendant.

95.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members.  Among the common questions of law and fact common to Plaintiff is:

(i)      Whether Defendants employed Plaintiffs within the meaning of the FLSA;

(ii)     What proof of hours worked is sufficient where the employers fail in their duty to maintain time records;

(iii)    Whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where the Collective Action Members are employed, in violation of 29 C.F.R. § 516.4;

(iv)     Whether   Defendants   failed   to   pay   Plaintiffs   overtime compensation for hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereafter;

(v)      Whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

(vi)     Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and,

(vii)    Whether Defendants should be enjoined from such violations of the FLSA in the future.

96.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

97.     Plaintiffs intend to seek leave of this Court for an order permitting a formal notice to potential class members and to establish the opt-in procedures by authorization of the Court.

98.     Plaintiffs will also move the Court to order Defendants to produce the names, physical addresses, and email addresses of those who should receive the notice, namely, similarly situated current and former office clerks of Defendants.

99.     Due to Defendants' willful violation of the 29 U.S.C. §§ 206–07, Plaintiff and all other similarly situated individuals are, pursuant to 29 U.S.C. § 216(b), entitled to recover from Defendants (i) "their unpaid overtime compensation"; and (ii) "in an additional equal amount as liquidated damages." 29 U.S.C. §§ 216(b).

### THIRD CAUSE OF ACTION
### Failure to Pay Overtime under New York Labor Law
### (On Behalf of Plaintiffs Brown and Buranondha)

100.    Plaintiffs respectfully incorporate all allegations in this Complaint as though separately alleged herein.

101.    New York State law overtime requirements mirror those of the FLSA. Specifically, employees are due one-and-a-half times pay for all hours worked in excess of forty (40).  12 NYCRR 142-2.2.

102.    Plaintiffs were not exempt from New York State overtime requirements.

103.    Plaintiffs were at no time paid an increased rate for overtime worked.  In fact, Plaintiffs were not compensated at all for any time worked beyond forty (40) hours per week.

104.    Due to Defendants' willful violation of 29 U.S.C. §§ 206–07, and therefore 12 NYCRR 142-2.2, Plaintiffs are entitled to recover from Defendants all underpayments, and "an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due."  N.Y. LAB. LAW § 663.

### FOURTH CAUSE OF ACTION
### Wage Theft for "Uniform Maintenance" Fees for Non-Existent Uniforms
### (On Behalf of Plaintiffs Brown and Buranondha)

105.    Plaintiffs respectfully incorporate all allegations in this Complaint as though separately alleged herein.

106.    Defendants illegally deduct ten dollars ($10) per bi-weekly pay period from Plaintiffs' pay for purported "uniform maintenance."

107.    Defendant's practice is in violation of N.Y. LAB. LAW § 193, which prohibits Defendants from taking such deductions out of Plaintiffs' pay.

108.    Furthermore, Defendants' deduct Plaintiffs' wages even though Plaintiffs do not wear uniforms at work.

109.    Defendants never reimbursed Plaintiffs for these withholdings.

110.    Defendants' policy of withholding uniform maintenance fees is an illegal and exploitative practice, and has caused Plaintiffs and Class members harm in the amount of ten dollars ($10) per week of employment with Defendants.

111.    Plaintiffs are entitled to recover from Defendants in the amount of ten dollars ($10) per week of employment with Defendants plus interest, liquidated damages, attorney's fees, and costs of litigation.

**WHEREFORE**, Plaintiff, on behalf of themselves and all other similarly situated Collective Action Members and members of the Class, respectfully request that this Court grant the following relief:

(i)     Certification of this action as a class action pursuant to FED. R. CIV. P. 23(b)(2) and (b)(3) on behalf of the members of the Class and appointing Plaintiffs and their counsel to represent the Class;

(ii)    Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, appraising them of the pendency of this action, permitting them to assert timely FLSA claims in this action

by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

(iii)    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the N.Y. LAB. LAW;

(iv)    An injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

(v)    An award of unpaid overtime compensation due under the FLSA and the N.Y. LAB. LAW;

(vi)    An award of liquidated damages as a result of Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

(vii)    An award of punitive damages as a result of Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

(viii)    An award of liquidated damages as a result of Defendants' willful failure to pay overtime compensation pursuant to N.Y. LAB. LAW;

(ix)    An award of pre-judgment interest;

(x)    An award of post-judgment interest;

(xi)    An award of costs and expenses of this action;

(xii)    Reasonable attorneys' fees;

(xiii)   Reasonable expert fees; and

(xiv)   Further relief as may be judged as equitable, just, and proper.


Dated: New York, New York              Respectfully submitted by:
        April 24, 2014                         THE HARMAN FIRM, PC


                                           s/   Walker G. Harman, Jr.
                                        Walker G. Harman, Jr. [WH-8044]
                                        1776 Broadway, Suite 2030
                                        New York, New York 10019
                                        (212) 425-2600
                                        wharman@theharmanfirm.com